UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMPASSION OVER KILLING, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>FOOD AND DRUG ADMINISTRATION, et al.,<br><br>　　　　　Defendants. | Case No. 13-cv-01385-VC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 35, 40 |

## INTRODUCTION

A coalition of individuals and animal rights organizations has filed this lawsuit, seeking a court order forcing the federal government to adopt regulations requiring egg producers to label their egg cartons according to the way they treat their hens. The Court declines to order the federal government to do this.

## BACKGROUND

Most eggs sold in the United States come from hens raised in "battery cage systems," where each hen is confined in a small cage that prevents the hen from moving freely. A small proportion eggs come from farms using "cage free" and "free range" production methods. The plaintiffs, a coalition of individuals and animal welfare organizations, contend that, aside from the obvious differences in how humanely hens are treated on farms using battery cages, compared to hens raised using cage free and free range methods, eggs from caged hens are nutritionally inferior and carry a greater risk of salmonella contamination. The plaintiffs further contend that labeling on many producers' egg cartons do not reflect the reality that the eggs are produced using battery cages. Indeed, the labeling on egg cartons often suggests that the hens are treated much more humanely. For example, some labels on cartons of eggs from hens in battery cages include images suggesting that the hens are raised in outdoor conditions with the space to move freely. The

plaintiffs contend that egg producers have a strong incentive to engage in this misleading labeling because more than 80 percent of consumers "prefer, and are willing to pay for, eggs that they perceive as coming from humanely treated hens."  Docket No. 35, p. 4.

Between 2006 and 2013, the plaintiffs submitted petitions to the Food and Drug Administration ("FDA"), the Federal Trade Commission ("FTC"), and two agencies within the United States Department of Agriculture ("USDA")—the Agriculture Marketing Service ("AMS") and the Food Safety Inspection Service ("FSIS").  Each petition requested that the relevant agency initiate rulemaking to revise existing labeling requirements or impose new regulations requiring egg producers to identify on the label the method used in producing the eggs.  Each agency denied the respective petition, and the plaintiffs filed this suit, alleging that each agency's denial was arbitrary and capricious in violation of the Administrative Procedure Act ("APA").  The parties have filed cross-motions for summary judgment.

## DISCUSSION

Under the APA, an agency decision may be disturbed only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  This standard is highly deferential to the agency.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  The Court must uphold the agency's action so long as it is "rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute."  *Motor Vehicle Mfrs. Ass'n, Inc., v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983).

**1.   The Plaintiffs' Petition to the FDA**

The FDA is responsible for administering the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), which prohibits the sale of misbranded food items.  Under the Act, a food item is misbranded if its label is false or misleading.  The Act provides:

> If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to

2

consequences which may result from the use of the article . . . .

21 U.S.C. § 321(n).

The plaintiffs' petition requested that the FDA promulgate new regulations (or revise its existing regulations) to require that all eggs be labeled as "free range," "cage free," or "eggs from caged hens" according to the conditions in which the birds were kept during the production process. FDA 001700. The petition argued that eggs from caged hens are nutritionally inferior to eggs from pastured hens, FDA 001719–22, eggs from caged hens carry a significantly higher risk of salmonella contamination than eggs from uncaged hens, FDA 001755–58, that consumers care about production methods and rely on the labeling on egg cartons to make purchasing decisions, and that many egg producers use labeling that misleads consumers about whether the eggs come from caged hens. FDA 001701–05.

The FDA gave three reasons for denying the plaintiffs' petition. First, it found that it was not authorized under the FDCA to regulate egg labeling based only upon consumer interest in animal welfare (as opposed to reasons relating to safety or nutrition). Second, the FDA found that the petition provided insufficient evidence of material differences in nutritional content and food safety that could be attributed solely to the use of cages in egg production. Finally, it found that even setting aside these legal and scientific issues with the plaintiffs' petition, the plaintiffs' proposed rulemaking was not a priority given the constraints on the agency's resources. As a result, it declined to engage in the requested rulemaking.

The Court need only address the FDA's third, independent reason for denying the plaintiffs' petition. "[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities." *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007). An agency's refusal to promulgate a rule is susceptible to only "extremely limited and highly deferential" judicial review. *Id.* at 527–28 (internal quotation marks omitted). "Such a refusal is to be overturned only in the rarest and most compelling of circumstances." *Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1, 4–5 (D.C. Cir. 1987) (internal quotation marks omitted). Here, the FDA detailed the agency's competing priorities given its limited resources and explained it had determined that the plaintiffs' proposed rulemaking was not the best use of its limited

resources. Given the high level of deference accorded this type of decision, the Court cannot say that the FDA's refusal was arbitrary and capricious.

This is in contrast to cases where an agency is mandated by Congressional statute to adopt regulations on a particular topic. For example, in *Massachusetts*, the Supreme Court rejected the EPA's argument that even if it had the statutory authority to promulgate the requested rule, it would decline to do so on prudential grounds. But the Court's ruling was based on the text of the Clean Air Act, which provided that the EPA "*shall* by regulation prescribe . . . standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." *Massachusetts*, 549 U.S. at 528 (emphasis added). While the EPA was authorized under the Act to exercise judgment in determining whether an air pollutant caused or contributed to air pollution that may endanger the public health or welfare, once the agency determined that a particular pollutant did in fact pose such a danger, the Act required that the EPA take action. *Id.* at 533. In contrast to the Clean Air Act, the FDCA includes no such mandate for agency action, and the plaintiffs offer no argument that the FDA's rulemaking authority under the Act is not entirely discretionary.

The plaintiffs respond that the FDA failed to properly address the merits of their arguments for the adoption of a regulation, and therefore the Court should, at the very least, remand the petition to the agency for reconsideration. But there is no indication the FDA somehow misunderstood the plaintiffs' petition. And there is no basis for refusing to credit the FDA's statement that its discretionary decision was independent of its decision on the merits. The FDA stated that, even if it set aside its disagreement with plaintiffs as to the legal and scientific basis for the rulemaking, it would choose to focus on other priorities. That is, even if the FDA concluded it had authority under the FDCA to issue the requested regulation, and even if it found that the plaintiffs' petition provided sufficient evidence of material differences in nutritional content and food safety resulting from the use of cages in egg production, it would choose not to expend agency resources on the plaintiffs' petition. Under these circumstances, there would be no reason

to remand the matter to the FDA to reconsider the merits of the plaintiffs' argument. *See In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991) ("[W]e have no basis for reordering agency priorities. The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way. Such budget flexibility as Congress has allowed the agency is not for us to hijack.").

**2. The Plaintiffs' Petition to the FTC**

The FTC is authorized under the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq.*, ("FTCA") to prescribe rules "with respect to unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 57a(a)(1)(A). However, the FTC may only issue a notice of proposed rulemaking "where it has reason to believe that the unfair or deceptive acts or practices . . . are prevalent." *Id*. § 57a(b)(3).

The FTC has issued policy statements in an effort to clarify its enforcement policy over deceptive and unfair acts. These statements explain that the FTC "will find an act or practice deceptive if there is a misrepresentation, omission, or other practice, that misleads the consumer acting reasonably in the circumstances, to the consumer's detriment." FTC 552295-0865. It will find a practice is unfair if the practice causes an "unjustified consumer injury." For the FTC to declare a practice unfair, the injury: (1) must be substantial; (2) must not be outweighed by any offsetting consumer or competitive benefits; and (3) must be one consumers could not reasonably have avoided. 15 U.S.C. § 45(n).

In their petition to the FTC, the plaintiffs argued both that the terms "free range" and "cage free," as they are currently used by egg producers, suggest to consumers more humane treatment than what the producers actually provide, and that representations and imagery used on the labels of eggs laid by caged hens creates the misleading impression that the eggs were produced under free-range or cage-free conditions. As with their petition to the FDA, the plaintiffs requested that the FTC initiate a rulemaking to address the resulting consumer deception by requiring all eggs to be labeled as either "free range," "cage free," or "eggs from caged hens," and providing specific definitions for these terms.

In considering whether the plaintiffs' petition established that egg producers currently

engage in deceptive labeling practices, the FTC accepted that claims about the production methods of eggs are material to consumers' egg purchasing decisions. However, the FTC found that the plaintiffs' petition provided insufficient evidence by which it could conclude that consumers are deceived by egg producers' current labeling practices. The FTC also found that the evidence in plaintiffs' petition was insufficient for it to conclude that the use of terms such as "All Natural" and "Animal Friendly" on the labels of eggs from caged hens created an impression that the eggs were produced without the use of cages. The FTC further concluded that the plaintiffs had provided insufficient evidence that any misleading practice was "prevalent."

Like the FDA, the FTC concluded that the issue did not warrant an exercise of its discretion to promulgate a regulation. FTC 567831-0006. This determination was made against the background of the FTC's stated preference to combat this type of deceptive practice through individual enforcement actions rather than the adoption of generally applicable regulations, as well as concerns about the resource commitment necessary to promulgate a regulation. And for this reason—as with the FDA—the Court cannot disturb the FTC's discretionary decision to refrain from promulgating a rule, even if reasonable minds could differ about the impact and prevalence of the potentially deceptive labels. Simply put, the FTC considered the merits of the plaintiffs' petition and concluded it contained nothing to convince the agency that egg producers' current labeling practices create such severe or widespread issues that it should engage in the costly and time-consuming process of rulemaking, rather than addressing any issues through case-by-case enforcement.[1] FTC 567831-0008. Because the decision whether to promulgate rules addressing unfair or deceptive acts is left to the discretion of the agency, 15 U.S.C. § 57a(a)(1), the denial of the plaintiff's petition was neither arbitrary nor capricious. *See SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("[T]he choice made between proceeding by general rule or by individual, ad hoc

---

[1] The plaintiffs argue that it is unreasonable for the FTC to demand additional evidence when the FTC's broad investigatory powers put the agency in the best position to gather such evidence. Docket No. 35 at 18. But the fact that the FTC is well equipped to conduct an investigation into the plaintiffs' claims does not obligate it to do so. Ultimately, as with the FDA's denial, the FTC's decision not to initiate the requested rulemaking—including its decision not to conduct further investigation into whether the complained-of labeling practices were in fact deceptive—was based on the agency's discretion as to how it marshals its resources.

litigation is one that lies primarily in the informed discretion of the administrative agency.").

### 3. The Plaintiffs' Petition to AMS

In their petition to AMS, the plaintiffs requested that AMS issue regulations mandating that eggs offered for retail sale bear labels designating the method of production for those eggs. The petition stated that AMS has the authority to promulgate such regulations under the Agricultural Marketing Act of 1946 and the Organic Foods Production Act of 1990. AMS denied the petition on the ground that neither statue gives AMS the authority to promulgate the regulations requested by the plaintiffs. Defs.' Opp. at 33.

The AMA gives AMS the authority

> To inspect, certify, and identify the class, quality, quantity, and condition of agricultural products when shipped or received in interstate commerce, under such rules and regulations as the Secretary of Agriculture may prescribe, . . . to the end that agricultural products may be marketed to the best advantage, that trading may be facilitated, and that consumers may be able to obtain the quality product which they desire[.]

7 U.S.C. § 1622(h)(1). However, this authority is expressly limited by the fact that "no person shall be required to use the service authorized by this subsection." *Id.* Therefore, AMS is correct that it lacks authority under this statute to force egg producers to label their cartons in a certain way.

The plaintiffs respond that AMS "possesses the expertise and institutional will to regulate animal husbandry related labeling requirements in order to eliminate consumer confusion." Pls.' Reply at 20. The plaintiffs point to the USDA grade mark and Process Verified Programs, both of which are services offered by AMS that involve regulation of labeling claims for agricultural products. But, in keeping with § 1622(h)(1), participation in both of these programs is voluntary, meaning that neither program provides a basis for AMS to issue the mandatory labeling regulation the plaintiffs requested in their petition.

The Organic Food Production Act authorizes AMS to establish the National Organic Program, under which the AMS regulates food labeling. 7 U.S.C. § 6503. Under the National Organic Program, AMS is authorized to define what constitutes an organic product and determine when a product may be labeled with a USDA "organic" seal. The National Organic Program

regulations provide standards for animal welfare that must be met for an egg producer to use the organic seal on its label, including the requirement that the egg-laying hens have access to the outdoors, fresh air, clean water for drinking, and direct sunlight. *See* 7 C.F.R. § 205.239. But as with the programs AMS administers under the AMA, participation in the organic program is voluntary; the regulatory requirements only apply to egg producers who wish to label their eggs as organic.

Finally, the plaintiffs argue that even if AMS has no authority to establish a mandatory nationwide labeling program, AMS is obliged to consider other options by which it could address the concerns raised in plaintiffs' petition for rulemaking, rather than denying the petition outright. But the plaintiffs' petition repeatedly emphasized the need for a mandatory labeling program—indeed, the petition disavowed that a voluntary program could adequately address the plaintiffs' concerns. AMS 0026. Given the petition's focus on the need for a regulation mandating method-of-production labels for all egg producers, and given that AMS lacked the authority to promulgate such a regulation, its decision to deny the petition in its entirety was not arbitrary or capricious.

### 4. The Plaintiffs' Petition to FSIS

As with the plaintiffs' petition to AMS, their petition to FSIS requested that the agency promulgate a regulation mandating that eggs offered for retail sale bear labels designating the method of production for those eggs. The petition identified the Egg Products Inspection Act as the source of FSIS's authority to issue such a regulation. But that statute primarily gives FSIS authority over the regulation of egg *products*; that is "dried, frozen, or liquid eggs, with or without added ingredients." 21 U.S.C. § 1033(f). Shell eggs fall within a different definition. *See* 21 U.S.C. § 1033(g). So although the Act authorizes FSIS to broadly regulate false or misleading labeling for egg *products*, 21 U.S.C. § 1036, it provides only very limited authorization for regulation of labeling for shell eggs. Specifically, 21 U.S.C. § 1034(e)(1) provides that the agency shall ensure that "shell eggs destined for the ultimate consumer . . . contain labeling that indicates that refrigeration is required," and 21 U.S.C. § 1046(a) provides for certain labeling requirements for *imported* eggs and egg products.

The plaintiffs point to the Act's Congressional statement of findings, which states that "[i]t

is essential, in the public interest, that the health and welfare of consumers be protected by the adoption of measures prescribed herein for assuring that eggs and egg products . . . [are] properly labeled and packaged, " 21 U.S.C.§ 1031, and to the Act's declaration of policy, which declares a Congressional policy to "prevent the movement or sale for human food, of eggs and egg products which are adulterated or misbranded[.]" 21 U.S.C. § 1032.  The plaintiffs argue that these broad pronouncements, coupled with the provision that "[t]he Secretary shall promulgate such rules and regulations as he deems necessary to carry out the purposes or provisions of this chapter," 21 U.S.C. § 1043, give the FSIS authority to promulgate the regulation the plaintiffs request.  But the preliminary statements of findings and policy simply set out the general basis for the Act's specific grants of authority to regulate.  As such, these sections do not themselves confer any authority on FSIS.  If they did, the statute's narrower grant of regulatory authority would be rendered superfluous.  And given the very limited authority provided to FSIS under the act to regulate the labeling of domestic shell eggs, the agency's determination that it was without authority to engage in the requested rulemaking was neither arbitrary nor capricious.

## CONCLUSION

Courts must afford an agency's discretionary decision not to initiate rulemaking the highest possible level of deference.  In light of this standard, the Court cannot say that any of the respective denials of the plaintiffs' petitions were arbitrary and capricious.  Accordingly, the plaintiffs' motion for summary judgment is denied.  The defendants' cross-motion is granted in full.

**IT IS SO ORDERED**.

Dated:  December 19, 2014

_____
VINCE CHHABRIA
United States District Judge